# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**SHARISSA FRAGUA, for**
**BRANDON E. FRAGUA, a minor,**

        **Plaintiff,**

**vs.**                                 **No. CIV 02-1628 LCS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 7), filed May 29, 2003.  Plaintiff brought this action on behalf of her minor son, Brandon E. Fragua (Brandon).  The Commissioner of Social Security issued a final decision denying Brandon's application for supplemental security income.  The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that the Motion is not well-taken and recommends that it be **DENIED**.

## I.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health and Human Svcs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if a reasonable mind might accept [it] as adequate to support a conclusion. *Andrade v. Sec'y of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)).  A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence

on the record.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

An individual under the age of 18 is considered disabled if that child has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C).  A sequential 3-step evaluation process governs the ALJ's determination of whether a child satisfies this statutory standard.  *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997).  The ALJ must determine, 1) that the child has not engaged in substantial gainful activity, 2) that the child has a severe impairment or combination of impairments, and 3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404 (listings).  *See* 20 C.F.R. § 416.924(a).

If the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled.  *See* 20 C.F.R. § 416.924(d)(2).  An impairment is functionally equivalent to a listed impairment if a claimant has an extreme limitation in one area of functioning or marked limitations in two or more areas of functioning.  *See* 20 C.F.R.  § 416.926a(b)(2).  In assessing functional equivalence, the ALJ must assess all relevant factors including, 1) how well the child initiates and sustains activities and how much extra help he needs, 2) how the child functions in school, and 3) how the child is affected by medications or other treatment.  *See* 20 C.F.R. § 416.926a(a)(1)-(3).

## II.  PROPOSED FINDINGS

On November 16, 2000, Plaintiff filed an application for supplemental security income on behalf of her son, Brandon Fragua (Brandon).  (R. at 62-68.)  Plaintiff alleged that Brandon had

2

been disabled since November 7, 2000 due to a speech impairment and growth problems in the

hands and feet. (R. at 62.) At the time of filing, Brandon was 5 years old. (Id.) Brandon's

application was denied at the initial level on March 7, 2001 (R. at 45.) and at the reconsideration

level on June 7, 2001. (R. at 46.) Plaintiff appealed the denial by filing a Request for Hearing by

Administrative Law Judge (ALJ) on July 17, 2001. (R. at 57-58.) The ALJ held a hearing on

March 20, 2002, at which Plaintiff and Brandon appeared and were represented by attorney Mark

Sanford. (R. at 26-44.)

The ALJ issued his decision on May 30, 2002, determining that Brandon's speech and

language deficits and multiple dysmorphic features were severe impairments, but did not meet or

equal any of the listed impairments, and thus Brandon was not disabled within the meaning of the

Social Security Act. (R. at 9-18.) Plaintiff filed a request for review with the Appeals Council,

(R. at 7-8), which was denied on October 23, 2002. (R. at 4-5.) Hence, the decision of the ALJ

became the final decision of the Commissioner for purposes of judicial review. On December 26,

2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision

pursuant to 42 U.S.C. § 405(g).

### III. ANALYSIS AND FINDINGS

Plaintiff brings this action on behalf of her 8-year old son, Brandon Fragua. Brandon was

born by Ceasarean section, the product of approximately 36 weeks gestation. (R. at 244.) The

Ceasarean section was performed due to fetal distress. (Id.) Post-operative diagnosis of

Brandon's mother revealed severe placental abruption. (Id.) Brandon's mother indicates that

Brandon required vigorous resuscitation at birth and that he has had short fingers and toes since

birth. (R. at 336.) Brandon also had a swirl pattern of hypopigmentation at birth most noticeable

3

on the back, but visible on other areas of the trunk.  (Id.)

Brandon was evaluated several times in mid to late-1998 by Leon Cohen, D.P.M. for problems relating to his hands and feet.  Brandon was noted to have flatfeet and an abducted/ toe out gait. (R. at 270.)  Hyperexternal rotation of both lower extremities and limited internal rotation were observed.  (Id.)   No ossification of the tarsal bones was seen on x-ray.  (R. at 271.) MLA pads were recommended for shoe support.  (R. at 268.)  No improvement was noted as the patient was noncompliant with the recommended treatment.  (R. at 267.)  New x-rays were recommended in September of 1998 to determine if ossification of the navicular bones was present.  (Id.)

Brandon underwent a multidisciplinary evaluation by the Carlsbad Municipal Schools in January of 1999.  (R. at 178.)  At that time, he was evaluated for speech and language and cognitive assessments.  (Id.)  Early achievement/ early readiness skills were found to be in the below average range.  (R. at 180.)  Visual-motor integration skills were found to be at the low end of the average range.  (Id.)  Speech therapy services were recommended to address language delays.  Participation in a preschool program for developmentally delayed children was also recommended.  (R. at 181.)  Gross motor skills were also evaluated at this time.  Brandon's gross motor skills were found to be 19 months below his chronological age of 53 months, or 36% below age expectancy.  (R. at 183.)  Brandon was found to be eligible for direct physical therapy services to address his gross motor deficits.  (R. at 184.)

Brandon's motor skills were re-evaluated in April, 2001 by the Carlsbad Municipal Schools.  Brandon was found to be able to participate in basic activities sufficient for peer interaction and socialization.  (R. at 220.)  Brandon was, at the time of evaluation, receiving 30

4

minutes per week of gross motor intervention.  (Id.)  He was noted to fatigue easily during aerobic activity.  Brandon had made appreciable gains in motor function, but continued to be delayed in all areas, with a motor age equivalent of 50 months, compared to a chronological age of 72 months.  (R. at 222.)  It was recommended at that time that physical therapy intervention be continued.  (Id.)

Brandon's language skills were also re-evaluated by the Carlsbad Municipal Schools in February of 2001.  Although Brandon's chronological age was 5 years 10 months, his receptive language skills had an age equivalency of 3 years 11 months (or 16th percentile) and expressive language skills had an age equivalency of 4 years 1 month (or 8th percentile).  (R. at 223.)  Brandon was found to have a language impairment and it was recommended that he receive language therapy.  (R. at 224.)

Brandon was given a psychological evaluation by Raiman Johnson, Ph.D. in February of 2001.  Dr. Johnson noted developmental delays in motor skills as well as delayed language skills.  (R. at 206.)  Brandon was felt to be of borderline intelligence.  (Id.)  Brandon was not found to have contributing environmental or psychosocial problems.  (R. at 209.)

In April of 2001, Brandon's teachers and therapists met and determined that Brandon would benefit from special education services to provide increased opportunities for individual instruction and to decrease his level of frustration.  (R. at 115.)  Brandon was noted to be delayed in body strength and language skills.  (R. at 118.)  It was noted at this meeting that Brandon's IQ score was in the average range and in achievement testing Brandon was performing in the average range.  (R. at 119.)  Brandon's teacher, Debbie Haschets, found that Brandon was generally doing well in the classroom.  (Id.)

Brandon was evaluated by Marshall Baca, M.D., an orthopedic specialist, in September of 2001 and again in November of 2001 for bilateral leg pain. (R. at 326.) Brandon was noted to have multiple atypical dysmorphic features. The head was found to be large in comparison with body size and brachydactyly was observed in the upper and lower extremities, with some suggestion of shortening of the arm and forearm limb segments. Subtle striae on the abdomen was observed as was valgus deformity of the knees. Dr. Baca found no evidence of a neuromuscular disorder. (Id.)

X-rays of Brandon's hips in September of 2001 demonstrated steep left shaft angles, but no hip joint abnormalities were observed. (R. at 327.) Films of Brandon's hands demonstrated slight irregularities and sclerosis on portions of the growth plates. (Id.) Dr. Baca felt these findings might suggest a possible endocrine abnormality and recommended a pediatric endocrine evaluation. (R. at 328.)

Brandon was seen by David Godfried, M.D. in Lubbock, TX in November of 2001 for problems with his hands and feet. (Id.) Dr. Godfried found that Brandon was in no distress and that his leg pain was not limiting activity, including ambulation. (Id.) Brandon was also found to have no endocrine dysfunction or genetic disorder. (Id.) Internal rotation of the legs was noted as were foreshortened hands and feet. (Id.) No angular deformities or congenital deformity for absence of bones was noted. (Id.) Dr. Godfried diagnosed Brandon with intermittent limb pain in the lower extremities, external tibial torsion and brachydactyly. (Id.)

Brandon's speech and language skills were reassessed by the Carlsbad Municipal Schools Special Education Department in February of 2002. When compared to Brandon's previous language scores, a decrease in overall language ability was noted. (R. at 176.) It was found that

Brandon had a continued need for speech therapy and that articulation goals should be added to that therapy.  (Id.)

### IV.  DISCUSSION

In her Motion to Reverse and Remand for Rehearing (Doc. 7), Plaintiff argues that the ALJ's determination that Brandon was not disabled under the listings was not supported by substantial evidence.

Plaintiff first contends that the ALJ misanalyzed Brandon's physical abilities by failing to consider all of the evidence and by substituting his own opinions for those found in the record.  It is well established in the Tenth Circuit that the ALJ must consider all the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Plaintiff is correct to point out that the ALJ must discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects.  *Id.*  However, it is clear from the ALJ's opinion that he did consider all the evidence in the record regarding Brandon's physical limitations.  (R. at 12-18.)

The ALJ acknowledged that Brandon suffered leg pain which limited his activities and found that Brandon had a severe impairment associated with his hands and feet.  (R. at 15-16.) The ALJ also considered evidence that Brandon had limitations in moving about and manipulating objects as well as records from Brandon's physicians and assessments by his physical therapists. (R. at 17.)  Although the ALJ noted that Brandon did have physical limitations, he found that the evidence as a whole did not show that Brandon had a marked impairment in the domain of moving about and manipulating objects.  The ALJ's determination as to Brandon's physical impairments was supported by substantial evidence and should therefore be upheld.

Plaintiff next argues that the ALJ erroneously found that Brandon did not meet an

impairment found in the listing of impairments.  Plaintiff contends that the evidence put forth to the ALJ demonstrated that Brandon had an impairment consistent with the listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 101.02A for major dysfunction of a joint with involvement of one major peripheral weight-bearing joint, resulting in an inability to ambulate effectively.  The inability to ambulate effectively is defined as an impairment causing insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 101.100(b)(2)(B).

Plaintiff has the burden under step three of the sequential evaluation of establishing that Brandon's condition meets or equals a listed impairment.  *Potter v. Secretary of HHS,* 905 F.2d 1346, 1349 (10th Cir. 1990).  In order for Plaintiff to meet this burden, she must show that Brandon's impairment satisfies all of the specified criteria.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  An impairment that meets only some of the criteria of a listed impairment does not qualify.  *Id.*  Plaintiff has presented no evidence to show that Brandon uses any assistive device when walking.  While it is apparent from the record that Brandon does experience pain and ambulates somewhat more slowly than his peers, this does not amount to an inability to ambulate effectively as defined in the regulation.  As a result, the Commissioner's decision that Brandon's impairments did not meet the criteria for a listed impairment should be affirmed.

Plaintiff also contends that the ALJ failed to examine the entire record with respect to Brandon's speech and language impairments.  Plaintiff's argument to this effect must fail.  Plaintiff claims that the ALJ ignored the substantial weight of the evidence with respect to Brandon's speech disorder and found that Brandon's speech was improving.  (Pl. Br. at 6-7.)  An

8

examination of the ALJ's opinion refutes this contention however.  The ALJ appears to have

considered all the evidence in the record regarding Brandon's speech and language impairments as

required under *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)("The ALJ is

charged with carefully considering all the relevant evidence and linking his findings with specific

evidence.")(R. at 16.)  Contrary to Plaintiff's contentions, the ALJ in fact found that Brandon had

a marked impairment in the area of acquiring and using information.  (R. at 16.)  The ALJ also

noted that recent assessments of Brandon's speech and language skills indicated a decrease in

language skills and a need for articulation therapy.  (Id.)  The ALJ's finding that Brandon's

speech and language impairments constituted a marked impairment was therefore also supported

by substantial evidence and should be upheld.

     Finally, Plaintiff argues that, because Brandon was found to be disabled by the

Commissioner pursuant to a later Social Security application, Plaintiff's initial claim was

meritorious by definition and the ALJ's decision should be reversed.  The period under this

Court's review is from November 2, 2000, the date of the filing of Plaintiff's first application,

until May 30, 2002, the date of denial of the application under review.  Brandon's condition after

the end of the period under review is not an issue before this Court.  While it is entirely possible

that Brandon's condition may have worsened in the period between May 30, 2002 and the finding

of disability, the only evidence that the ALJ could consider is the evidence from the relevant

period.  The evidence from the relevant period supports a finding that Brandon was not disabled.

Therefore, the decision of the Commissioner should be upheld.

## IV.  CONCLUSION

     Upon review of the evidence presented on this Motion to Reverse and Remand for

Rehearing, this Court has determined that the Commissioner's decision was supported by substantial evidence.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED**.

      **A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**